November 10, 1994
 [NOT FOR PUBLICATION]

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

 

No. 94-1638

 NORBERTA BATISTA-CANALES,

 Plaintiff, Appellant,

 v.

 SECRETARY OF HEALTH AND HUMAN SERVICES,

 Defendant, Appellee.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF PUERTO RICO

 [Hon. Juan M. Perez-Gimenez, U.S. District Judge] 

 

 Before

 Cyr, Circuit Judge, 
 Bownes, Senior Circuit Judge, 
 and Stahl, Circuit Judge. 

 

Juan R. Requena Davila and Juan A. Hernandez Rivera on brief for 
appellant.
Guillermo Gil, United States Attorney, Maria Hortensia Rios, 
Assistant United States Attorney, and Nancy B. Salafia, Assistant 
Regional Counsel, Department of Health and Human Services, on brief
for appellee.

 

 

 Per Curiam. Claimant, Norberta Batista-Canales, 

appeals from the judgment of the district court affirming the

decision of the Secretary of Health and Human Services that

she is not entitled to Social Security disability benefits.

 Claimant filed an application for disability

benefits on March 14, 1991, listing as disabilities asthma

and a back condition. She alleged an onset date of April 1,

1985; her insured status expired on September 30, 1990.

After a hearing, an administrative law judge (ALJ) determined

that claimant's impairments, as of September 30, 1990, did

not prevent her from performing her past work as a machine

operator in the electronics industry. In this job, she

assembled parts by soldering them together; she functioned in

a seated position and was not required to lift more than 10

pounds at a time. She stopped working in February 1985 when

the company closed.

 Specifically, the ALJ found that claimant suffered

from severe degenerative disease of the facet joints in her

spine, chronic lumbosacral sprain, allergic rhinitis,

bronchial asthma and depression. He credited her allegations

of pain to the extent that she was precluded from performing

more than sedentary work. He next found that claimant had

the residual functional capacity to engage in work that did

not involve (1) prolonged walking or standing, (2) lifting

more than 10 pounds, (3) frequent bending, and (4) exposure

to dust, fumes, gases, detergents and perfumes. The Appeals

Council denied claimant's request for review.

 On appeal to this court, claimant first asserts

that the ALJ was not qualified to assess whether her prior

work was free of the above pollutants. She cites to Social

Security Ruling 85-15 which provides, in part, that "[w]here

an individual can tolerate very little noise, dust, etc., the

impact on the ability to work would be considerable because

very few job environments are entirely free of irritants,

pollutants, and other potentially damaging conditions."

Social Security Ruling 85-15 goes on to distinguish between

the above situation and one requiring only avoidance of 

excessive amounts of pollutants. In the latter case, "the

impact on the broad world of work would be minimal because

most job environments do not involve great noise, amounts of

dust, etc." Where the level of restriction "falls between

very little and excessive, resolution of the issue will

generally require consultation of occupational reference

materials or the services of a VS [vocational specialist]."

 Claimant argues that because there was no evidence

from which the ALJ could have concluded that her past work

was compatible with the limits placed on her by her asthma,

the ALJ should have consulted a VS. Although the ALJ did not

specify the level of claimant's environmental restriction, we

do not need to reach this issue. There is substantial

evidence in the record to support the conclusion that

claimant's asthma, prior to September 30, 1990, imposed

 -3-

minimal restrictions on her abilities to function at work.

As such, the impact on the number of sedentary jobs would be

small.

 Before September 1990, there is only one reference

to an asthmatic condition. In January 1990, claimant

underwent surgery to remove a cyst due to chronic maxillary

sinusitis. See Exhibit 14. The diagnoses were bronchial 

asthma and allergic rhinitis. A chest X-ray taken at this

time revealed clear lungs and claimant's prognosis was

considered to be good. The rest of the medical evidence is

from 1991 and 1992. Specifically, claimant's treating

physician, Dr. Juan de los Santos, did not mention a

diagnosis of chronic bronchial asthma until March 1991. See 

Exhibit 11.

 There is no evidence in the 1990 reports concerning

any treatment for claimant's asthma during the period of time 

for which she was insured. The diagnosis of bronchial asthma

standing by itself is insufficient to establish claimant's

entitlement to disability benefits. See Tsarelka v. 

Secretary of Health and Human Services, 842 F.2d 529, 534 

(1st Cir. 1988) (per curiam). In any event, Dr. de los

Santos stated that claimant experienced only two attacks per

month, each one lasting 15 to 20 minutes. See Exhibit 11. 

Further, in two residual functional capacity (RFC)

assessments, completed by non-examining physicians in 1991,

 -4-

claimant was rated as having no environmental restrictions.

Given the paucity of evidence indicating a more severe

condition, the ALJ's conclusion that claimant's asthma did

not preclude her from performing her past work is

sufficiently supported.

 Claimant's second argument on appeal is that the

ALJ did not engage in the correct analysis in evaluating her

complaints of disabling pain. Specifically, claimant asserts

that, at the hearing, the ALJ failed to inquire about the

nature of the pain, the effectiveness of any medication or

other treatment, and the impact the pain had on claimant's

daily activities and functional restrictions. At the

hearing, claimant was questioned by her attorney concerning

her back pain. She testified that she experiences stabbing

pain in the left side of her back and in her left leg. As a

result of this pain, claimant stated that she could not bend

over to pick up something from the floor and that after

sitting, she must straighten herself out slowly in order to

be able to stand. She also must change position frequently

and must crawl to dress herself. Since the first episode of

back pain in April 1985, the pain has worsened. Further, in

a disability report, claimant stated that she could not lift

or carry heavy objects, could not sit for any length of time

and must avoid bending. She cannot perform household chores.

 -5-

 In his decision, the ALJ referred to the above

information in evaluating claimant's pain. He also relied on

the complaints of pain that claimant presented to a

consulting neurologist on April 30, 1991. Therefore, we

think that the ALJ correctly applied Avery v. Secretary of 

Health and Human Services, 797 F.2d 19 (1st Cir. 1986). As 

for the severity of claimant's pain, the ALJ, in fact,

credited her allegations of disabling pain in determining

that work more arduous than sedentary would aggravate her

condition. This finding is supported by the record.

 As the ALJ pointed out, claimant only received

treatment on one occasion prior to the expiration of her

insured status. Claimant was hospitalized from April 11 to

April 15, 1985 due to severe lumbosacral myositis. See 

Exhibit 20. A note dated April 12, 1985 stated that claimant

was markedly improved. When she was discharged claimant was

stable but still had some lumbosacral discomfort. According

to Dr. de los Santos, a C-T Scan, performed two months prior

to claimant's hospitalization, was within normal limits,

despite a finding of degenerative joint disease in the facet

joints. The only other reference to claimant's back is an X-

ray report dated June 30, 1990. It showed mild

spondyloarthritic changes of the L4 vertebra, with well-

preserved vertebral height and intervertebral spaces.

 -6-

Claimant did not seek any other treatment for her back until

March 1991 when she began seeing Dr. Noreiga Sanchez.

 Again, the lack of medical evidence for the

relevant time period supports the decision of the ALJ that

claimant could perform her past work. Also, the two 1991 RFC

assessments indicate that claimant can frequently lift up to

25 pounds and can sit, stand and walk for up to six hours

each in an eight-hour work day. Finally, the consultative

neurology examination in April 1991 showed normal gait,

posture and muscle tone. Claimant could pick up pieces of

paper from the floor without difficulty. There was no

atrophy and claimant retained full range of motion in all

extremities.

 For the foregoing reasons, the judgment of the

district court is affirmed. 

 -7-